FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 04, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH M.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>　　　　　　　Defendant. | NO:  2:23-CV-00145-LRS<br><br>ORDER AFFIRMING THE<br>COMMISSIONER'S DECISION |

BEFORE THE COURT are the parties' briefs.[2]  ECF Nos. 9, 11.  This matter

was submitted for consideration without oral argument.  Plaintiff is represented by

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20,

2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is

substituted for Kilolo Kijakazi as the Defendant in this suit.

[2] Plaintiff's opening brief is labeled a Motion for Summary Judgment.  ECF No. 9.

The supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went

ORDER - 1

attorney Chad Hatfield.  Defendant is represented by Special Assistant United States Attorney Ryan Lu.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's brief, ECF No. 9, is denied and Defendant's brief, ECF No. 11, is granted.

## JURISDICTION

Joseph M. [3] (Plaintiff) filed for disability insurance benefits and for supplemental security income on August 9, 2018, alleging in both applications an onset date of August 2, 2018.  Tr. 209-16.  Benefits were denied initially, Tr. 136-44, and upon reconsideration, Tr. 148-61.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 10, 2020.  Tr. 36-87.  On July 10, 2020, the ALJ issued an unfavorable decision, Tr. 12-32, and on October 7, 2020, the Appeals Council denied review.  Tr. 1-6.  Plaintiff appealed to the United States District Court for the Eastern District of Washington, and on February 15, 2022, pursuant to the stipulation of the parties, the undersigned remanded the matter for further proceedings.

---

into effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

[3] The last initial of the claimant is used to protect privacy.

ORDER - 2

After a second hearing on February 23, 2023, Tr. 674-99, the ALJ issued a second unfavorable decision on March 14, 2023.  Tr. 642-73.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 36 years old on the alleged onset date.  Tr. 661. He has work experience as a heating and air conditioning servicer, an adult rehabilitation aide, welder, auto parts clerk and runner, tire service and repair provider, casino buffet supervisor, mini-mart clerk, and powder coater.  Tr. 69-73.  Plaintiff testified that his major problem is ruptured discs in his lower back and herniated discs in his neck. Tr. 42.  He has pain in his right leg, lower back, middle back, shoulders, neck, and arms.  Tr. 43.  He sometimes has difficulty standing straight due to lower back pain, and his neck sometimes gets so tight that he has difficulty turning his head side to side.  Tr. 52.  He gets tension headaches that turn into migraines.  Tr. 52.  His back pain travels into his right leg and occasionally into his left leg.  Tr. 53.  On really bad days he cannot do much more than sit or lie down.  Tr. 56.  He has bad days two times per week on average.  Tr. 56.  He has pain and numbness in his arms and has difficulty gripping and holding things with his hands.  Tr. 61.   At the second

hearing, Plaintiff testified that some of his pain and limitations had gotten worse. Tr. 680-684.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it

is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 7

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 2, 2018, the alleged onset date. Tr. 648. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; mild degenerative disc disease of the cervical spine; headaches; and, as of 2/17/21, left ulnar neuropathy and right median mononeuropathy. Tr. 648.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 651. The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> he could never climb ladders, ropes, or scaffolds, could never crawl, but could occasionally perform all other postural activities. He could frequently use a foot pedal with the left lower extremity and could occasionally reach overhead bilaterally. He should avoid concentrated exposure to extreme cold and vibration, and should avoid all exposures to hazards. As of February 17, 2021, the residual functional capacity assessment is as above with the addition of no repetitive, forceful grasping.

Tr. 652.

At step four, the ALJ found that before February 17, 2021, Plaintiff could perform past work as an assembler and cashier auto parts services. Tr. 661.

ORDER - 8

Alternatively, at step five, after considering and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as collator operator, deliverer outside, and routing clerk.  Tr. 661-62.  Thus, the ALJ determined that Plaintiff has not been under a disability as defined in the Social Security Act from August 2, 2018, through the date of the decision.  Tr. 663.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 9.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly considered the medical opinion evidence;

2.  Whether the ALJ properly considered Plaintiff's impairments at step two;

3.  Whether the ALJ properly considered Plaintiff's subjective complaints; and

4.  Whether the ALJ properly considered step four and step five.

ECF No. 9 at 8.

## DISCUSSION

### A.    Medical Opinions

For claims filed on or after March 27, 2017, the regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical

ORDER - 9

opinion(s)…" *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b).  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may, but is not required, to explain how other factors were considered.  20 C.F.R. § 404.1520c(b)(2); *see* 20 C.F.R. § 404.1520c(c)(1)-(5).

   *1. Inda Hertz, PA-C*

   In March 2022, PA-C Hertz completed a physical disability evaluation.  Tr. 1696-1706.  She listed diagnoses of lumbar degenerative disk disease, right lumbar radiculopathy, cervical degenerative disk disease, left cervical radiculopathy, chronic neck and lower back pain, right carpal tunnel syndrome/chronic right-hand numbness and weakness.  Tr. 1704.  PA-C Hertz opined that Plaintiff is limited to standing/walking two to four hours per day cumulative, 60-90 minutes at a time; frequent balancing, climbing ladders, and climbing stairs; frequent use of foot controls; lifting/carrying 21-50 pounds occasionally and 15-20 pounds frequently; frequent push/pull; frequent reaching waist to shoulder; frequent reaching above

ORDER - 10

1    shoulder;  continuous gross and fine manipulation; continuous environmental

2    exposures except frequent unprotected heights.  Tr. 1705-06.

3    The ALJ found the opinion of PA-C Hertz to be "generally persuasive."  Tr.

4    660.  Plaintiff argues that despite finding PA-C Hertz's opinion is persuasive, the

5    ALJ failed to properly translate her findings to the RFC finding.  ECF No. 9 at 11.

6    Plaintiff argues that the limitation of cumulative sitting and standing of two to four

7    hours per day assessed by PA-C Hertz is inconsistent with the RFC finding of light

8    work.  ECF No. 9 at 11.

9    With regard to supportability, the ALJ found the opinion is well-supported by

10   the consultative exam.  Tr. 660.  The more relevant the objective medical evidence

11   and supporting explanations provided by a medical source to support his or her

12   opinion, the more persuasive the medical opinion will be.  20 C.F.R. §§

13   404.1520c(c), 416.920c(c).  With regard to consistency, however, the ALJ found

14   certain limitations assessed by PA-C Hertz to be inconsistent with the record.  Tr.

15   660.  The more consistent a medical opinion is with the evidence from other medical

16   sources and nonmedical sources in the claim, the more persuasive the medical

17   opinion will be.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The ALJ found the

18   standing and walking limitation assessed by PA-C Hertz is inconsistent with the

19   record which shows a generally normal gait, tandem gait, and toe and heel walking.

20   Tr. 660 (citing Tr. 429, 449, 458, 468, 540, 543, 555, 564, 572-73, 636, 1031, 1517,

21   1699, 1998, 2036).  The ALJ also found that the limitations on bilateral foot control

ORDER - 11

1  use and reaching are inconsistent with the record.  Tr. 660 (numerous citations).  The

2  ALJ rejected the sitting and standing limitation based on a legally sufficient reason

3  supported by substantial evidence.  Contrary to Plaintiff's argument, the ALJ is not

4  required to incorporate evidence from discounted medical opinions into the RFC.

5  *Batson*, 359 F.3d at 1197.  There is no error regarding PA-C Hertz's opinion.

6      *2.  Henry Urbaniak, M.D.*

7      Dr. Urbaniak testified as the medical expert at the first hearing in June 2020.

8  Tr. 43-50.  He observed that Plaintiff's main issues are neck, arm, low back, and leg

9  pain.  Tr. 43-44.  Dr. Urbaniak noted an MRI showed a herniated disc at L4-5 with

10  some restrictions of lumbosacral motion which is consistent with low back and leg

11  pain.  Tr. 43.  He noted that much of the testing of Plaintiff's lower extremities was

12  within normal limits.  Tr. 43. Dr. Urbaniak opined that Plaintiff's impairments do

13  not meet or equal a listing, and that reasonable limitations include lifting and

14  carrying 20 pounds occasionally and 10 pounds frequently; no ladders, ropes, or

15  scaffolds; limited climbing stairs, ramps, and ladders; limited crawling, stooping,

16  and crouching; and no unprotected heights.  Tr. 46-47.

17      The ALJ found Dr. Urbaniak's opinion is very persuasive.  Tr. 657.  With

18  regard to supportability, the ALJ found Dr. Urbaniak's opinion is supported by the

19  findings he cited in his testimony.  Tr. 657.  With regard to consistency, the ALJ

20  found his opinion is generally consistent with the medical record, including findings

21  of generally normal gait, tandem gait, motor strength, grip strength, sensation,

monofilament foot sensation, reflexes, often normal range of upper and lower extremity range of motion; lumbar and cervical range of motion, and mild findings on imaging.  Tr. 657-58 (numerous citations).

Plaintiff argues the ALJ erred by relying on Dr. Urbaniak's testimony because, according to Plaintiff, Dr. Urbaniak "admitted that he did not adequately review the record in failing to identify the electrodiagnostic evidence of cervical radiculopathy."  ECF No. 9 at 12 (citing Tr. 47-48).  This argument fails for several reasons.

First, Plaintiff's argument is not an accurate characterization of Dr. Urbaniak's testimony.  At the hearing, Plaintiff's counsel asked Dr. Urbaniak about page 14 of exhibit 12F.  Tr. 47-48.  The exhibit noted a cervical MRI dated September 6, 2019, indicating a disc bulge at C5-6, and EMG findings from July 26, 2019, showing acute cervical radiculopathy.  Tr. 505.  Dr. Urbaniak said he "must have missed the notes on the cervical EMG."  Tr. 48. Counsel directed Dr. Urbaniak to the exhibit and said, "the EMG showed an acute C6 radiculopathy with active denervation –denervation, and they also noted some small nerve root discs at [various] levels."  Tr. 49.   Counsel asked if the MRI and EMG findings are "consistent with his complaints of having neck pain that goes through the shoulder down in – into hand?"  Tr. 49.  Dr. Urbaniak replied said "[y]es, it is."  Tr. 49. Counsel asked if notes from the same exhibit indicating three out of five strength, three out of five grip, and three out of five range of motion are related to the same

ORDER - 13

neck impairment.  Tr. 49.  Dr. Urbaniak replied, "I think it'd be related to the neck issues."  Tr. 49.  Thus, Dr. Urbaniak did not "admit" an inadequate review of the record, he said only that he did not make a note of a cervical EMG, and no questions were posed about the EMG that he was unable to answer.  This does not reasonably undermine his testimony or reduce his credibility as an expert witness.

Furthermore, after Dr. Urbaniak testified, the ALJ pointed out to counsel that page 14 of exhibit 12F is an office visit record which includes the provider's summary of the 2019 MRI and EMG but not the actual MRI and EMG reports.  Tr. 50.  The ALJ noted that counsel did not accurately read the provider's summary of the EMG to Dr. Urbaniak.  Tr. 50.   The ALJ noted:

> My -- my concern about that is because what you were saying to the doctor is not exactly what is reported in this review of the EMG.  It says that he had denervation to the left bicep and to the cervical paraspinal muscles, but it says that no evidence of sensory motor myopathy entrapment, mononeuropathy or polyneuropathy is found in the upper extremities.  In other words, he had problems with his upper back and into his shoulder area, but there was nothing going down his arm into his hands.  So that's why I wanted to see the actual EMG to see if it says something different from what this summary says.  Because this summary doesn't – isn't copasetic with [what] you were asking the doctor.

Tr. 50-51.  Counsel then said, "Oh, yes, I just said denervation.  I didn't even say where, yeah."  Tr. 51.  Thus, this portion of Dr. Urbaniak's testimony is based on counsel's inaccurate or incomplete reading of the record and which suggested greater impairment than the record actually indicates.  Even so, Dr. Urbaniak did not identify any additional limitations due to counsel's statement of the EMG results.

ORDER - 14

Additionally, the ALJ's decision noted counsel's question regarding the EMG results, but pointed out the exhibit is only a summary by a physician assistant and does not contain the objective results of the MRI and EMG.  Tr. 657.  The actual EMG report does not appear to be part of the record.[4]  Tr. 51.  Ultimately, Dr. Urbaniak's testimony regarding a record summarizing the EMG does not appear to impact the RFC finding.  The ALJ's consideration of the EMG testimony was reasonable and supported by the record.

Furthermore, even if Dr. Urbaniak overlooked a significant piece of evidence (and the Court does not so find), Plaintiff identifies no authority indicating remand is appropriate on this basis.  ECF No. 9 at 12.  The RFC determination is an administrative finding reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d); 416.927(d);  *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine [RFC].").  In addition to Dr. Urbaniak's opinion, the ALJ considered other medical opinions, Plaintiff's symptom allegations, and the rest of the record in formulating the RFC.  Tr. 652-61.  Plaintiff has not established any error.

## B.    Step Two

---

[4] The 2019 cervical MRI is part of the record and was considered by the ALJ.  Tr. 654 (citing Tr. 518).

ORDER - 15

1    At step two of the sequential process, the ALJ must determine whether there is

2    a medically determinable impairment established by objective medical evidence

3    from an acceptable medical source.  20 C.F.R. §§ 404.1521, 416.921.  A statement

4    of symptoms, a diagnosis, or a medical opinion does not establish the existence of an

5    impairment.  *Id*.  After a medically determinable impairment is established, the ALJ

6    must determine whether the impairment is "severe;" i.e., one that significantly limits

7    his or her physical or mental ability to do basic work activities.  20 C.F.R. §§

8    404.1520(c), 416.920(c).  However, the fact that a medically determinable condition

9    exists does not automatically mean the symptoms are "severe" or "disabling" as

10    defined by the Social Security regulations.  *See e.g. Edlund*, 253 F.3d at 1159-60;

11    *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545,

12    1549-50 (9th Cir. 1985).

13    To establish a severe impairment, the claimant must first demonstrate that the

14    impairment results from anatomical, physiological, or psychological abnormalities

15    that can be shown by medically acceptable clinical or laboratory diagnostic

16    techniques.  20 C.F.R. §§ 404.1521, 416.921. In other words, the claimant must

17    establish the existence of the physical or mental impairment through objective

18    medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable

19    medical source; the medical impairment cannot be established by the claimant's

20    statement of symptoms, a diagnosis, or a medical opinion.  *Id.*

21

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(a), 416.922(a); SSR 85-28.

Step two is not meant to identify the impairments that should be considered when determining the RFC.  *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).  In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling (S.S.R.) 96-8p, 1996 WL 374184, at *5 (July 2, 1996); Thus, the ALJ must consider the effect of all impairments, including medically determinable but non-severe impairments, in evaluating the RFC.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

At step two, the ALJ found Plaintiff has severe impairments of degenerative disc disease of the lumbar spine, mild degenerative disc disease of the cervical spine, headaches, and, as of February 17, 2021, left ulnar neuropathy and right

ORDER - 17

median mononeuropathy.  Tr. 648.  Plaintiff contends the ALJ should have found additional severe impairments of lumbar radiculopathy, cervical radiculopathy, carpal tunnel syndrome, and cubital tunnel syndrome.  ECF No. 9 at 13.

First, the severe impairment of mononeuropathy includes carpal tunnel syndrome (mononeuropathy across the wrist) and cubital tunnel syndrome (mononeuropathy across the wrist or elbow).  *See e.g.*, *Diane S. V. v. Kijakazi*, 2023 WL 3801946, No. 22-cv-06385-SK (N.D. Cal. June 2, 2023).  Thus, the ALJ did not err by not naming carpal tunnel or cubital tunnel syndrome as severe impairments.

Second, with regard to radiculopathy, Defendant argues that Plaintiff's position is without merit because radiculopathy is a symptom, not an impairment, and symptoms are not impairments within the meaning of the regulations.  ECF No. 11 at 14 (citing *e.g.*, Kyoung-Taei Kim and Young-Baeg Kim, *Cervical Radiculopathy due to Cervical Degenerative Diseases: Anatomy, Diagnosis and Treatment*, J. Korean Neuro. Soc., at 473-79, December 31, 2010, https://pmc.ncbi.nlm.nih.gov/articles/PMC3053539/).  Plaintiff notes at least one instance where radiculopathy is listed as a diagnosis in the record, ECF No. 9 at 14, and alleges it requires him to lie down throughout the day to relieve pain.  However, a diagnosis alone does not establish the severity of an impairment.  *See Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Regardless, even if the ALJ should have found one of these conditions to be a severe impairment, any error would be harmless.  When an ALJ fails to identify a

ORDER - 18

severe impairment at step two, but nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Here, the ALJ considered all of Plaintiff's impairments at the subsequent steps of the sequential analysis and in his summary of the medical evidence.  Tr.  651-62.

At step three, the ALJ considered the listing relevant to radiculopathy by considering Listing 1.15 for disorders of the skeletal spine resulting in compromise of a nerve root and the listing relevant to carpal tunnel and cubital tunnel syndrome by considering Listing 11.14 for peripheral neuropathy.   At step four, the ALJ also considered many of the records referenced by Plaintiff regarding symptoms related to carpal tunnel syndrome, cubital tunnel syndrome, and radiculopathy.   Tr. 655-56 (citing *e.g.*, Tr. 475, 496-97, 400, 505, 1055-56).  The ALJ acknowledged the nerve conduction study in February 2019 showed mild chronic right S1 lumbar polyradiculopathy with evidence of reinnervation only and no acute denervation.  Tr. 654, 475.  However, the ALJ also noted a nerve conduction test of the lower extremities in February 2022 was normal, without evidence of lumbar radiculopathy.  Tr. 654, 1052; *see also* Tr. 1995 (2/24/20 electrodiagnostic studies of the lower extremities were normal without evidence of myopathy, radiculopathy, or peripheral polyneuropathy).   The ALJ included limitations in the RFC resulting from Plaintiff's degenerative disc disease of the lumbar and cervical spine.  Tr. 652-54.

ORDER - 19

Furthermore, the ALJ included limitations in the RFC as of February 17, 2021, resulting from Plaintiff's left ulnar neuropathy and right median mononeuropathy, based on the same records cited by Plaintiff.  Tr. 652, 656.

The ALJ considered Plaintiff's radiculopathy, carpal tunnel syndrome, and cubital tunnel syndrome throughout the decision.  Thus, even assuming the ALJ erred at step two, that error would have been harmless.  *Lewis*, 498 F.3d at 911; *see also Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (the party appealing the ALJ's decision bears the burden of establishing harm).

## C.    Symptom Testimony

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

ORDER - 20

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims)).

"The clear and convincing [evidence] standard is the most demanding

required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.

2002)).  Factors to be considered in evaluating the intensity, persistence, and

limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side

effects of any medication an individual takes or has taken to alleviate pain or other

symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to pain

or other symptoms. 2017 WL 5180304, at *9 (effective October 25, 2017); 20

C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the

evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, at *2.

First, the ALJ found that the clinical findings are inconsistent with Plaintiff's allegations. Tr. 655. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680. Furthermore, contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

The ALJ found that the clinical findings, particularly repeated normal range of motion findings, normal ability to heel/toe walk without difficulty, normal upper and lower extremity strength, normal sensation, and normal grip, all of which were noted by the ALJ in detail, are inconsistent with Plaintiff's allegations of an inability to stand in one place for over five minutes, walk 15 minutes at a time and needing to immediately lie down, and needing to lie down five to six times per day for at least a half hour at a time. Tr. 655. The ALJ also found the clinical findings are

ORDER - 22

inconsistent with allegations of an inability to grip things, hold items, or write and needing to have someone "pry open" his fingers.  Tr. 655.

Plaintiff asserts the ALJ "offered little more than vague assertions that the claimant's allegations are unsupported by the objective medical evidence," ECF No. 9 at 23 (citing *Robbins*, 466 F.3d 880), but Plaintiff does not address the ALJ's specific findings.  Plaintiff also asserts the ALJ "failed to account" for electrodiagnostic studies and decreased strength in Plaintiff's upper extremities. ECF No. 9 at 23 (citing Tr. 497, 499, 504-05). However, as noted *supra*, the ALJ considered the electrodiagnostic studies in the record and acknowledged records of decreased grip strength in April, May, and August 2019 (Tr. 497, 499, 504) cited by Plaintiff, but also noted that Plaintiff made good gains in grip strength with physical therapy, Tr. 640, and that in February 2020, his grip strength was normal.  Tr. 589. Additionally, the ALJ noted instances of normal 5/5 grip strength on exam in February, August, and September 2020 and in January 2021.  Tr. 656 (citing Tr. 608, 1032, 1065, 1118).  The ALJ reasonably considered the electrodiagnostic studies and evidence of reduced grip strength.

Plaintiff further argues the ALJ "failed to account" for objective evidence of radiculopathy in the form of electrodiagnostic studies.  ECF No. 9 at 17.  This is incorrect, as the ALJ considered the February 17, 2021, nerve conduction study which showed ulnar mononeuropathy across the left elbow and right medium mononeuropathy.  Tr. 656.  Based on those findings, as well as other objective

ORDER - 23

findings discussed in detail by the ALJ, the ALJ included an additional limitation in the RFC of no repetitive, forceful grasping.  Tr. 656.  Plaintiff has not acknowledged or specifically challenged the ALJ's discussion of the evidence.  The ALJ's consideration of the clinical findings in the record was reasonable and based on substantial evidence.

Second, the ALJ found that Plaintiff's daily activities are consistent with the RFC finding.  Tr. 657.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in evaluating symptom claims.  *See Rollins*, 261 F.3d at 857.  "Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.  The ALJ noted that Plaintiff was able to ride his motorcycle, including riding a new motorcycle 160 miles over a weekend in February 2021, which the ALJ found is inconsistent with greater sitting or gripping and handling limitations.  Tr. 657 (citing Tr. 1183, 1384, 1420).  The ALJ also observed that Plaintiff is independent with shopping, chores, and hygiene, which does not support additional exertional or postural limitations.  Tr. 657.

Plaintiff argues generally that the ALJ erred by "overstating the claimant's activities and failing to identify any inconsistency with her [sic] disabling allegations."  ECF No. 9 at 17.  Plaintiff also argues that the ALJ improperly considered his testimony about hiking and child care activities.  ECF No. 9 at 18.

ORDER - 24

Although Plaintiff does not cite the ALJ's decision, Plaintiff is apparently referencing the previously vacated 2020 decision, wherein the ALJ discussed those daily activities, as the current decision does not mention hiking or child care in this context.[5] Tr. 23-24, 657. As such, the argument is moot. Plaintiff does not address the daily activities mentioned by the ALJ in the current decision. The ALJ reasonably found that Plaintiff's ability to ride a motorcycles 160 miles over a weekend is inconsistent with Plaintiff's allegations of disabling sitting, gripping, and handling limitations, to the extent they exceed the limitations in the RFC finding. The ALJ's conclusion is supported by substantial evidence, and this is a clear and convincing reason.

Plaintiff also contends the ALJ failed to address his allegations of napping multiple times per day or the need to lie down for half a day three to four days per

---

[5] Plaintiff also argues the ALJ improperly stated that Plaintiff's conservative treatment is inconsistent with his symptom testimony. ECF No. 9 at 18-19. As with Plaintiff's argument regarding his hiking and child care activities, the argument is moot. The ALJ in the current decision did not cite Plaintiff's conservative treatment as inconsistent with his allegations, although Plaintiff's course of treatment was noted. Tr. 655. Presumably, Plaintiff is responding to the ALJ's prior decision which did mention conservative treatment, Tr. 24, but that decision was vacated after the previous remand.

ORDER - 25

week.  ECF No. 9 at 20.  However, the ALJ acknowledged Plaintiff's allegations

that he needs to lie down often, Tr. 653, but as discussed *supra*, the ALJ concluded

the clinical findings do not support the need to lie down five to six times per day for

a half hour at a time.  Tr. 655.  Furthermore, it is noted that no provider assessed any

limitations related to the need to lie down.  Tr. 657-61.  The ALJ did not err in this

regard.

**D.    Prior Court Order**

Plaintiff asserts the ALJ failed to follow the previous order of this Court and

the Appeals Council.  ECF No. 9 at 20-21.  This argument has no merit.  The prior

order of this Court was based on the stipulation of the parties.  Tr. 747-49.

Plaintiff's assertion that the ALJ was instructed to "reconsider whether the claimant

could maintain competitive employment despite a restriction to occasional handling

since February 2019" is not supported by anything contained in this Court's prior

order.  Tr. 747-49.

The Appeals Council's remand order addressed the ALJ's assessment that

beginning in February 2019, Plaintiff's RFC changed to include manipulative

limitations.  Tr. 779.  The AC determined the ALJ's rationale for this finding was

inadequate because specific evidence supporting a limitation to occasional reaching

and handling was not identified.  Tr. 779.  The ALJ was instructed to "[g]ive further

consideration to the claimant's maximum residual functional capacity during the

entire period at issue and provide rationale with specific references to evidence of

ORDER - 26

record in support of assessed limitations" and the prior decision was vacated. Tr. 778-79. The Appeals Council did not find that Plaintiff is limited to occasional reaching and handling; rather, the Appeals Council directed the ALJ to reconsider the RFC finding and ensure that it is supported by references to evidence in the record.

As discussed throughout this decision, the ALJ did exactly that, which resulted in a limitation of no repetitive, forceful grasping rather than occasional handling and reaching. The limitation of no repetitive, forceful grasping is supported by references to the record. Tr. 656-57. It is noted that despite arguing that the ALJ erred by failing to include a limitation to occasional reaching and handling in this decision, Plaintiff has not identified any specific evidence in the record supporting that particular limitation. The ALJ did not err in carrying out the prior order of this Court or the Appeals Council.

**E.    Steps Four and Five**

Plaintiff contends that the ALJ erred by "creating a new term" in the RFC finding. ECF No. 9 at 21. The RFC finding includes a limitation to "no repetitive, forceful grasping" after February 17, 2021. Tr. 652. Without providing citations, Plaintiff argues that the DOT refers to "handling, fingering, and feeling" and that the regulations refer to "handling," suggesting that the limitation to "no repetitive, forceful grasping" is not an appropriate limitation. ECF No. 9 at 21. However, Plaintiff points to no authority requiring that the RFC contain only terms defined

ORDER - 27

by the Dictionary of Occupational Titles or the regulations. In fact, it is the ALJ's responsibility to provide an interpretation of the facts and conflicting clinical evidence and make an RFC finding based on that interpretation. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir.2008). Furthermore, numerous district court cases have acknowledged a limitation regarding forceful grasping. *See e.g.*, *Absari v. Berryhill*, No. SACV 17-00665-JEM, 2018 WL 1870408, at *5 (C.D. Cal. Apr. 17, 2018); *Robles v. Colvin*, No. 1:14-CV-00285-SMS, 2014 WL 7447764, at *7 (E.D. Cal. Dec. 31, 2014) (collecting cases).

In this case, the ALJ provided a detailed review of the clinical findings and opinion evidence in formulating Plaintiff's RFC. Tr. 652-61. The ALJ specifically discussed the evidence supporting the grasping limitation, which was "designed to avoid exacerbating the claimant's hand pain and numbness." Tr. 656-57 (citing Tr. 1055, 1405, 1699). The vocational expert considered the vocational impact of "no repetitive, forceful grasping" and concluded that there are jobs an individual with that limitation and others assessed by the ALJ can do. Tr. 694-95. Thus, Plaintiff has not established any error.

Plaintiff further argues the ALJ erred at steps four and five because the vocational expert's opinion was based on an incomplete hypothetical. ECF No. 9 at 21. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should

be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument assumes that the ALJ improperly rejected limitations of occasional handling and gripping and the need to lie down multiple times per day.[6] ECF No. 9 at 21. The ALJ's reasons for rejecting those limitations were, as discussed throughout this decision, legally sufficient and supported by substantial evidence. The ALJ therefore properly excluded additional limitations from the RFC and hypothetical to the vocational expert. The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical was

---

[6] Plaintiff mentions in passing an allegation of being off task more than 10% of the time. ECF No. 9 at 21. The Court does not consider matters on appeal that are not specifically and distinctly argued. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

ORDER - 29

therefore proper. *See id.*; *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217-18 (9th Cir. 2005).

<strong>CONCLUSION</strong>

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1.    Plaintiff's Brief, **ECF No. 9**, is **DENIED**.

2.    Defendant's Brief, **ECF No. 11**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** December 4, 2024.

_____
LONNY R. SUKO
Senior United States District Judge